**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERB DISTRICT OF VIRGINIA**
**Norfolk Division**

**BRENT J. KELLY,**

       **Plaintiff**

**v.**                                        **Case No. _____**

**CITY OF CHARLOTTE, NORTH CAROLINA,**

**MARCUS D. JONES,**

**and**

**JASON M. SCHNEIDER,**

       **Defendants.**

## <u>COMPLAINT</u>

      Brent J. Kelly, by counsel, files this Complaint and demands judgment against Defendants on the following grounds and in the following amounts:

### INTRODUCTION

      1.     This is an action for unlawful discrimination against Plaintiff, Brent J. Kelly, by the City of Charlotte, North Carolina, its city manager, and its director of public information, in willful violation of the Family and Medical Leave Act 29 U.S.C. § 2601 *et seq*. ("FMLA"), and for unlawful interference with the rights of Plaintiff under the FMLA by the City of Charlotte, North Carolina, its city manager, and its director of public information, also in willful violation of FMLA. Defendants discriminated against Plaintiff and interfered with his FMLA rights by terminating his employment under a pretext of job elimination and then by denying him a position for which he applied and was qualified, all because of Plaintiff's prior use of FMLA leave and expected future use of FMLA leave. In this action Plaintiff seeks backpay,

reinstatement to the prior position or alternatively front pay, placement in the denied position or alternatively front pay, interest on backpay, liquidated damages, and his costs and expenses including reasonable attorney's fees.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA").

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district, and Plaintiff performed a substantial part of his work for Defendants in this district.

## PARTIES

4.     Brent J. Kelly ("Kelly") is an individual residing in the City of Virginia Beach, Virginia.

5.     The City of Charlotte, North Carolina ("City") is a municipal corporation organized and existing under the laws of the State of North Carolina.

6.     Marcus D. Jones ("Jones") is an individual residing in the City of Charlotte, North Carolina, and is and at all relevant times was the City Manager of the City.

7.     Jason M. Schneider ("Schneider") is an individual residing in the City of Charlotte, North Carolina, and is and at all relevant times was the Director of Public Information for the City.

## FMLA COVERAGE

8.     At all relevant times the City was and is a public agency as defined by Section 3(x) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 203(x), and, was an employer of Kelly

within Section 101 of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611(4)(A)(iii), during the times described in this Complaint.

9. At all relevant times Jones was a person who acted, directly or indirectly, in the interests of the City in regard to Kelly during Kelly's employment with the City, and was, together with the City, an employer of Kelly within Section 101 of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611(4)(A)(ii)(I), during the times described in this Complaint.

10. At all relevant times prior to the termination of Kelly's employment described in this Complaint, Kelly was employed by the City for at least 12 months and for at least 1250 hours and was an eligible employee within Section 101 of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611(2)(A).

## FACTUAL ALLEGATIONS

11. On or about March 31, 2017, the City offered to employ Kelly as Chief Marketing Officer under the terms and conditions stated in a letter from Cheryl D. Brown, who at that time was employed by the City as its Director or Human Resources, to Kelly, which offer Kelly accepted.

12. On or about April 17, 2017, Kelly began employment as Chief Marketing Officer for the City.

13. As Chief Marketing Officer, Kelly initially reported to the City Manager for the City, Marcus D. Jones ("Jones").

14. As Chief Marketing Officer, Kelly initially worked with, *inter alia*, Jason Schneider ("Schneider"), who was the Communications Director for the City and who also reported to Jones.

15. During Kelly's employment by the City, Kelly received consistently good performance evaluations and feedback concerning his job performance.

16. Kelly is and at all relevant times has been married to his wife, Diana Kelly.

17. At all relevant times during Kelly's employment with the City, Kelly and his wife maintained a residence in Virginia Beach, Virginia, and Kelly maintained a second residence in Charlotte, North Carolina, where Kelly regularly resided except for approximately every other weekend, when he would reside with his wife at the Virginia Beach residence.

18. In 2020 and thereafter, and during some times prior, Kelly's father, who lived in Virginia Beach, Virginia, suffered from medical conditions which constituted serious health conditions under FMLA, and because of those conditions required care by others.

19. On about January 24, 2020, Kelly's wife suffered injuries, which initially were believed not to be serious, in a car accident in Virginia Beach, Virginia, and on that date his wife informed Kelly, who at the time was in Charlotte at work, of the accident.

20. On or about January 28, 2020, Kelly spoke to Jones and told Jones, *inter alia*, that Kelly's mother's 86th birthday was the previous day, but it was a difficult day for her as Kelly's father's illness was getting more challenging for her to handle and Kelly would need to take some time to help her.

21. On or about January 28, 2020, Kelly notified the City, through UNUM, which provided FMLA administrative services to the City, that he would need FMLA leave to provide care for his father due to his father's serious health condition from March 30, 2020 through June 29, 2020.

4

22.     On or about February 4, 2020, Kelly learned that his wife would require back surgery as a result on the January 24, 2020 car accident, and that he would be needed in Virginia Beach to provide care to her during her recovery.

23.     On or about January 29, 2020, Kelly reassessed the period of time during which he would need FMLA leave, and withdrew his January 28, 2020 request for FMLA leave, and had a discussion with Amanda Dillard ("Dillard"), who was the Human Resource Manager in the City's Human Resource Department, about Kelly's needs to provide care to his father and his wife.

24.     On or about January 29, 2020, Kelly met with Schneider and in that meeting had a discussion with Schneider about Kelly's needs to provide care to his father and his wife.

25.     On or about January 30, 2020, Kelly called Jones to request a face-to-face meeting concerning Kelly's needs to provide care to his father and his wife. Kelly and Jones agreed to meet on January 31, 2020 after work.

26.     On or about January 31, 2020 at approximately 5:00 PM Jones told Kelly he was tied up in meetings, so Jones and Kelly agreed to speak by phone that evening. Jones and Kelly spoke by phone that evening at approximately 6:30 PM. During the call Kelly discussed with Jones that his wife's injuries from the accident were severe, discussed with Jones that Kelly's mother required assistance caring for Kelly's father, and informed Jones that Kelly would be taking FMLA leave to provide care to for his wife and his father. Jones asked Kelly to keep Schneider advised of when Kelly would be on FMLA leave. This was the last time Jones spoke to Kelly.

27.     On or about February 2, 2020, Kelly and Schneider communicated about upcoming meetings Kelly would be unable to attend due to Kelly's upcoming FMLA leave and

projects being handled by Kelly which may require attention during Kelly's upcoming FMLA leave. At this time, Schneider informed Kelly that Jones had changed the reporting structure and that Kelly would no longer report to Jones and that instead Kelly would report to Schneider.

28.     Because of the needs of his father, Kelly, with the approval of the City, took leave beginning February 10, 2020, which the City designated as continuous FMLA leave.

29.     On or about February 10, 2020, Kelly and Schneider exchanged messages regarding Kelly's wife's need for care by Kelly as a result of her accident.

30.     On or about February 11, 2020, Kelly informed Schneider that Kelly would follow up with Kelly's wife regarding FMLA leave.

31.     On or about February 13, 2020, Kelly submitted to the City, via UNUM, a request for continuous FMLA leave to provide care to his father due to his father's serious health condition through May 11, 2020. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted.

32.     On or about February 14, 2020, Dillard confirmed Kelly would be on FMLA leave until May 11, 2020, and that on May 11, 2020 Kelly would return to work.

33.     On or about February 27, 2020, Kelly submitted to the City a request to change the original FMLA continuous leave for his father from twelve weeks to six weeks due to complications caused by the COVID-19 pandemic. Kelly's new return to work date after six weeks continuous FMLA leave was March 23, 2020.

34.     On or about February 27, 2020, Kelly submitted to the City a request for intermittent FMLA leave through August 16, 2020 to provide care to his wife.

6

35. On or about March 20, 2023, Schneider informed Kelly that the government center was closed due to the COVID-19 pandemic and that Kelly should plan on working remotely.

36. On or about March 22, 2020, Kelly returned to work from continuous FMLA leave. At that time Kelly had used 6 weeks of FMLA leave for the FMLA leave year then in effect.

37. On or about March 23, 2020, Kelly attempted to contact Schneider but Schneider replied that Schneider was not available.

38. On or about March 24, 2020, Kelly again attempted to contact Schneider but Schneider replied that Schneider was not available but that he may be available on Thursday, March 26, 2020. Kelly replied, "Okay. Please let me know if there's anything I can do to help."

39. On or about March 27, 2020, Kelly left a message for Schneider to let Kelly know if Kelly could help with anything.

40. On or about May 1, 2020, Dillard sent Kelly an email stating Kelly's annual automobile allowance of $5,700 was being discontinued by the City effective April 25, 2020.

41. On or about May 1, 2020, Schneider sent Kelly an email with a bi-weekly meeting request beginning May 21, 2020.

42. On or about May 21, 2020, after Kelly and Schneider discussing the health and needs of Kelly's wife and Kelly's father, Schneider told Kelly that, effective July 1, 2023, Schneider was restructuring the department, that Kelly's title was being changed, that Kelly was being relieved of all supervisory responsibilities, and that Kelly's annual salary was being reduced from $173,400 to $156,060.

7

43.     On or about June 4, 2020, Schneider cancelled a one-on-one meeting of Schneider and Kelly to review documents concerning best practices for the City's website and a peer review of that website.

44.     Prior to on or about June 10, 2020, Kelly had been invited to and had attended senior leadership team meetings which occurred bi-weekly on Wednesday mornings, and he attended Communication Department meetings; beginning on or about June 10, 2020, Kelly was excluded from all such meetings.

45.     On or about July 1, 2020, the City changed Kelly's title from Chief Marketing Officer to Brand Manager, Kelly was relieved of all supervisory responsibilities, Kelly's annual salary was reduced from $173,400 to $156,060, and Kelly reported to Schneider.

46.     Upon information and belief, those actions were taken by all three Defendants.

47.     On or about July 2, 2020, Kelly notified the City that he would need intermittent FMLA leave from June 30, 2020 through August 16, 2020 to provide care to Kelly's wife due to his wife's injuries and related surgery.  At the time of this request, Kelly had used six weeks and eight hours of FMLA leave, and had 5 weeks and 32 hours of FMLA leave remaining in his FMLA 12-month leave period then in effect. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted. Kelly ultimately used 2 weeks and 3 hours of the intermittent leave authorized under his July 2, 2020 request.

48.     On or about July 2, 2020, Schneider cancelled a previously scheduled one-on-one meeting of Schneider and Kelly concerning the City's website.

49.     On or about July 16, 2020, Kelly sent to Schneider a website audit sample for the City's website, and Kelly resent to Schneider the previously sent documents concerning best practices for the City's website and a peer review of that website.

50. On or about July 30, 2020, Schneider asked Kelly not to speak to anyone about the work on the City's website, and informed Kelly that Schneider would discuss the website with the Information Technology Department and get back to Kelly.

51. On or about August 13, 2020, Schneider cancelled a scheduled one-on-one meeting of Schneider and Kelly concerning the City's website and told Kelly it would be rescheduled.

52. On or about August 27, 2020, Schneider again cancelled a scheduled one-on-one meeting of Schneider and Kelly.

53. On or about September 10, 2020, Schneider cancelled another scheduled one-on-one meeting of Schneider and Kelly and told Kelly it would be rescheduled.

54. On or about September 17, 2020, Kelly's father accidentally fell and broke his collar bone, and as a result was hospitalized and needed ongoing care.

55. On or about September 17, 2020, Kelly sent to Schneider an email, which Schneider read, informing Schneider: "My dad fell, had to go to the hospital - he has a broken collar bone. We need to come up with a 24/7 care plan to keep him safe. I am going to submit paperwork for intermittent FMLA to help out. I'll keep you posted."

56. Shortly after his father's September 17, 2020 fall, Kelly notified the City that he would need intermittent FMLA leave to provide care to his father from October 8, 2020 through October 7, 2021. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted.

57. Beginning on or about October 8, 2020, Kelly took intermittent FMLA leave to provide care to his father.

58.     On or about October 22, 2020, Schneider again cancelled a scheduled one-on-one meeting of Schneider and Kelly.

59.     On or about October 7, 2020, Kelly submitted to the City, via UNUM, a request for intermittent FMLA leave to provide care to his father due to his father's serious health condition. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted for intermittent FMLA leave between October 8, 2020 through October 7, 2021.

60.     At the time of his October 7, 2020 FMLA leave request, Kelly had approximately 4 weeks and 37 hours of FMLA leave remaining in his FMLA 12-month leave period then in effect.

61.     On or about November 5, 2020, Schneider again cancelled a scheduled one-on-one meeting of Schneider and Kelly.

62.     On November 14, 2020, Kelly sent to Schneider an email, which Schneider read, informing Schneider:

> My dad fell again over the week-end so we have set up a rotating schedule among family members to provide continuous care. We plan to assess the situation every 30 days to make adjustments/modifications as needed. I will keep you updated if needs/plans change. I plan to use vacation days or FMLA-sick leave for these days. Right now my planned days are as follows:
>
>     12/3/20-12/8/20 Thursday-Tuesday
>     1/4/21 - 1/6/21 Monday- Wednesday
>     2/11/21 – 2/16/21 Thursday – Tuesday
>
> I will adjust and / or make myself available if work needs require. Please let me know if you foresee any issues with these dates.

63.     On November 19, 2020, Schneider met with Kelly over the phone, and in that meeting informed Kelly that Kelly's position was being eliminated effective March 1, 2021. Kelly was told no other positions were being affected.

64.     On November 20, 2020 at 8:21 AM, Dillard sent to Kelly an email with an attached letter from Dillard to Kelly dated November 19, 2020, which letter stated, *inter alia*: "Your position as Brand Manager, with the City of Charlotte has been eliminated. A transition exit plan has been established. Your separation of employment date will be March 1, 2021."

65.     Kelly's employment with the City was terminated by the City on or about March 1, 2021.

66.     Upon information and belief, Defendants eliminated Kelly's position and terminated Kelly's employment because Kelly had a pattern of taking FMLA leave, Defendants expected Kelly to continue taking FMLA leave in the future, Defendants desired to replace Kelly with a person or persons performing Kelly's job duties who would not need comparable FMLA leave in the future, and Defendants desired to conceal its interference with Kelly's use of FMLA leave and its discrimination against Kelly for taking FMLA leave.

67.     Defendants' elimination of Kelly's position was a pretext for unlawful discrimination against Kelly for taking FMLA leave and unlawful interference with Kelly's future use of FMLA leave.

68.     Kelly would have continued in his employment with the City but for Defendant's unlawful discrimination and interference.

69.     On or about December 24, 2020, Kelly submitted to Defendant an application for employment in a Deputy Director of Communications position posted by Defendant.

70.     Kelly was qualified for the Deputy Director of Communications position.

71.     Between December 24, 2020 and February 25, 2021, Kelly received no response or communications from Defendant in response to his application for the Deputy Director of Communications position.

72.     Upon information and belief, as of February 25, 2021 the Deputy Director of Communications position had not been filled.

73.     On February 25, 2021 at 2:34 34 PM Kelly sent an email to Dillard which stated: "I applied for the deputy director Comms job posting on 12/24 as the duties were in line with my experience and prior responsibilities at the city. I thought this would be a good way to help Team CLT and to assume a new role given I was on FMLA. Is my application still under consideration?

74.     Kelly received no response to his February 25, 2021 2:34 34 PM email to Kelly, and received no communications whatsoever from Defendant in response to his application for the Deputy Director of Communications position until on or about April 12, 2021.

75.     On or about April 12, 2021, Kelly received an email from Dillard regarding the Deputy Director of Communications job, in which Dillard stated, "After careful consideration, we have decided to pursue other candidates."

76.     Upon information and belief, Kelly was the most qualified candidate for the Deputy Director of Communications job.

77.     Defendant did not offer the Deputy Director of Communications position to Kelly and upon information and belief hired some other less qualified person to fill that position.

78.     Upon information and belief, Defendant did not offer the Director of Communications position to Kelly, and in fact refused to genuinely consider his application for that position, because Kelly had a pattern of taking a significant amount of FMLA leave, Defendant expected Kelly to continue taking a significant amount of FMLA leave in the future, Defendant desired to hire a person for the Deputy Director of Communications position who would not need a significant amount of FMLA leave in the future.

79. Defendants' denial of the Deputy Director of Communications position to Kelly was a pretext for unlawful discrimination against Kelly for taking FMLA leave and unlawful interference with Kelly's future use of FMLA leave.

80. Upon information and belief, Kelly would have been selected for the Deputy Director of Communications position but for Defendant's unlawful discrimination and interference.

81. At the time of Kelly's termination and at the time of the denial of Kelly's application for the Deputy Director of Communications position, the City was the fifteenth or sixteenth largest city by population in the United States, had an annual budget of 2.63 billion dollars, had an extensive human resources department which was thoroughly knowledgeable of FMLA law, had an experienced city attorney, Patrick Baker, had a senior assistant city attorney, Mindy Sanchez, whose sole role was to serve as legal counsel to the City's human resources department and on employment issues, and had extensive experience with and knowledge of the FMLA, the rights of employees thereunder including Kelly, the obligations of the City under the FMLA, and the FMLA's prohibitions against discrimination and interference.

82. At the time of Kelly's termination and at the time of the denial of Kelly's application for the Deputy Director of Communications position, Jones had more than 20 years of public service experience at the city and state level, including serving as the city manager, assistant city manager and budget director for the City of Norfolk, Virginia, the deputy chief administrative officer for the City of Richmond, Virginia, and the deputy secretary of finance for two governors in the Commonwealth of Virginia, and possessed a bachelor's degree in public administration from James Madison University and a master's degree in public administration from Virginia Commonwealth University, and, upon information and belief, had extensive

experience with and knowledge of the FMLA, the rights of employees thereunder including Kelly, the obligations of the City under the FMLA, and the FMLA's prohibitions against discrimination and interference.

83.     Defendants' unlawful discrimination and interference was in conscious, intentional, deliberate and willful violation of the FMLA, and was in reckless disregard for Kelly's rights and Defendants' obligations under the FMLA.

## COUNT 1

### DISCRIMINATORY FOR USE OF FMLA LEAVE
### BY ACTIONS LEADING UP TO AND INCLUDING DISMISSAL

84.     The allegations set forth elsewhere in this Complaint are incorporated by reference into this count.

85.     Defendants discriminated against Kelly in violation of the FMLA, 29 U.S.C. § 2615(a)(2), by actions including but not necessarily limited to changing Kelly's direct supervisor from Jones to Schneider, changing Kelly's title from Chief Marketing Officer to Brand Manager, removing all supervisory responsibilities from Kelly's position, reducing Kelly's annual salary from $173,400 to $156,060, eliminating Kelly's position as Brand Manager, and terminating Kelly's employment.

86.     As a direct result of said unlawful discrimination, Kelly has lost and will continue to lose wages and employee benefits he would have earned as an employee of the City.

WHEREFORE, Kelly demands judgment against Defendants for violation of the FMLA and relief as described below in the Prayer For Relief.

## COUNT 2

## INTERFERENCE WITH USE OF FMLA LEAVE
## BY ACTIONS LEADING UP TO AND INCLUDING DISMISSAL

87.     The allegations set forth elsewhere in this Complaint are incorporated by reference into this count.

88.     Defendants interfered with Kelly's use of FMLA leave in violation of the FMLA, 29 U.S.C. § 2615(a)(1), by actions including but not necessarily limited to changing Kelly's direct supervisor from Jones to Schneider, changing Kelly's title from Chief Marketing Officer to Brand Manager, removing all supervisory responsibilities from Kelly's position, reducing Kelly's annual salary from $173,400 to $156,060, eliminating Kelly's position as Brand Manager, and terminating Kelly's employment.

89.     As a direct result of said unlawful interference, Kelly has lost and will continue to lose wages and employee benefits he would have earned as an employee of the City.

WHEREFORE, Kelly demands judgment against Defendants for violation of the FMLA and relief as described below in the Prayer For Relief.

## COUNT 3

## DISCRIMINATION FOR USE OF FMLA LEAVE
## BY DENIAL OF HIRING

90.     The allegations set forth elsewhere in this Complaint are incorporated by reference into this count.

91.     Defendants discriminated against Kelly's use of FMLA leave in violation of the FMLA, 29 U.S.C. § 2615(a)(2), by actions including but not necessarily limited to denying Kelly employment as the Deputy Director of Communications.

92.     As a direct result of said unlawful discrimination, Kelly has been and will continue to be denied wages and employee benefits he would have earned as the Deputy Director of Communications.

WHEREFORE, Kelly demands judgment against Defendants for violation of the FMLA and relief as described below in the Prayer For Relief.

**COUNT 4**

**INTERFERENCE WITH USE OF FMLA LEAVE
BY DENIAL OF HIRING**

93.     The allegations set forth elsewhere in this Complaint are incorporated by reference into this count.

94.     Defendants interfered with Kelly's use of FMLA leave in violation of the FMLA, 29 U.S.C. § 2615(a)(1), by denying Kelly employment as the Deputy Director of Communications.

95.     As a direct result of said unlawful interference, Kelly has lost and will continue to lose wages and employee benefits he would have earned as an employee of the City.

WHEREFORE, Kelly demands judgment against Defendants for violation of the FMLA and relief as described below in the Prayer For Relief.

**PRAYER FOR RELIEF**

As and for relief, Kelly demands an award of the following:

a.     Back pay in an amount of $601,120 or such other amount as may be proven by the evidence at trial.

b.     Liquidated damages in an amount of $601,120 or such other amount as may be proven by the evidence at trial;

c.      Reinstatement to Kelly's prior position or to a comparable position with equivalent wages and benefits and restoration of seniority and service credit, or in the alternative front pay in the amount of $957,738 or such other amount as may be proven by the evidence at trial.

d.      Pre-judgment interest in an amount to be determined at trial;

e.      Reasonable attorney fees, reasonable expert witness fees, and other costs of this action; and

f.      Such other and further relief authorized as the interests of justice may require.

## JURY TRIAL DEMAND

Kelly demands a trial by jury on all issues of fact.

**BRENT J. KELLY**


By:  _____/s/_____
Raymond L. Hogge, Jr.
Virginia State Bar No. 29445
Counsel for Brent K. Kelly
Hogge Law
500 E. Main Street, Suite 1200
Norfolk, VA 23510
Tel: (757) 961-5400
Fax: (757) 962-5979
rayhogge@virginialaborlaw.com

November 5, 2023