**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:24-cv-0008-RJC-SCR**

| | |
|---|---|
| **BRENT J. KELLY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CITY OF CHARLOTTE, NORTH CAROLINA,** | ) |
| **and MARCUS D. JONES and JASON** | ) |
| **M. SCHNEIDER, Individually,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

The Plaintiff, Brent J. Kelly, complaining of the Defendants, avers and states the

following as his First Amended Complaint:

**I.**
## INTRODUCTION & NATURE OF ACTION

This civil action arises from willful violations of the Family & Medical Leave Act of

1993, as amended, 29 U.S.C. § 2601, *et seq.* (the "FMLA").  The Plaintiff, Brent J. Kelly, alleges

that the Defendant, City of Charlotte, North Carolina, by and through its City Manager,

Defendant Marcus D. Jones ("Jones"), and its Director of Public Information, Defendant Jason

M. Schneider ("Schneider"), interfered with his rights under the FMLA and discriminated

against him because of his use of intermittent FMLA leave during 2020 and 2021. In addition,

Mr. Kelly alleges that the Defendants terminated his employment effective March 1, 2021 and

denied him employment in a new position, for which he applied and for which he was qualified,

because of his prior use of FMLA leave and expected future use of FMLA leave. Mr. Kelly, in

filing this action, seeks appropriate equitable and monetary relief from the Defendants, jointly and/or severally, in the form of back pay, reinstatement, or alternatively, front pay, liquidated damages, pre-judgment interest, and his reasonable attorneys' fees and costs as provided by federal law.

## II.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA").

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district, and Plaintiff performed a substantial part of his work for Defendants in this district.

## III.
## PARTIES

3. Brent J. Kelly ("Kelly") is an individual residing in the City of Virginia Beach, Virginia.

4. The City of Charlotte, North Carolina ("City") is a municipal corporation organized and existing under the laws of the State of North Carolina.

5. Marcus D. Jones ("Jones") is an individual residing in the City of Charlotte, North Carolina, and is, and at all relevant times, was the City Manager of the City of Charlotte.

6. Jason M. Schneider ("Schneider") is an individual residing in the City of Charlotte, North Carolina, and is, and at all relevant times, was the Director of Public Information for the City.

7. At all times relevant herein, Defendant City voluntarily waived its governmental immunity by its ratification of City Ordinance 4289 (October 12, 2009) and/or through its adoption of a plan of insurance pursuant to N.C. Gen. Stat. §160A-485. Based upon information

and belief, Defendant City was, at the time of the events described herein, self-insured and maintained excess insurance for certain acts and omissions, including violations of the FMLA.

## IV.
## FMLA COVERAGE

8. At all relevant times as described in this Amended Complaint, the City was and is a public agency as defined by Section 3(x) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 203(x), and, was an employer of Kelly within Section 101 of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611(4)(A)(iii).

9. At all relevant times as described in this First Amended Complaint, Jones was a person who acted, directly or indirectly, in the interests of the City with regard to Kelly during Kelly's employment with the City, and was, together with the City, an employer of Kelly within Section 101 of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611(4)(A)(ii)(I).

10. At all relevant times as described in this First Amended Complaint, Schneider was a person who acted, directly or indirectly, in the interest of the City with regard to Kelly during Kelly's employment with the City, and was, together with the City, an employer of Kelly within Section 101 of the Family & Medical Leave Act of 1993, as amended, 29 U.S.C. § 611(4)(A)(ii)(I).

11. At all relevant times prior to the termination of Kelly's employment as described in this Amended Complaint, Kelly was employed by the City for at least 12 months and for at least 1250 hours and was an eligible employee within Section 101 of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611(2)(A).

## V.
## STATEMENT OF FACTS

12. On or about March 31, 2017, the City offered to employ Kelly as Chief Marketing

3

Officer under the terms and conditions stated in a letter from Cheryl D. Brown, who at that time was employed by the City as its Director or Human Resources. Kelly accepted the City's offer.

13. On or about April 24, 2017, Kelly began employment as Chief Marketing Officer for the City.

14. As Chief Marketing Officer, Kelly initially reported to the City Manager for the City, Marcus D. Jones ("Jones").

15. Beginning in September, 2019 and in his role as Chief Marketing Officer, Kelly initially worked with, *inter alia*, Jason Schneider ("Schneider"), who was the Communications Director for the City and who also reported to Jones.

16. During Kelly's employment by the City Kelly received consistently good performance evaluations and feedback concerning his job performance. During his employment with the City Kelly never received any warnings or reprimands regarding his work performance or his workplace conduct.

17. Kelly is, and at all relevant times, has been married to his wife, Diana Kelly.

18. At all relevant times during Kelly's employment with the City, Kelly and his wife maintained a residence in Virginia Beach, Virginia, and Kelly maintained a second residence in Charlotte, North Carolina, where Kelly regularly resided except for approximately every other weekend, when he would reside with his wife at the Virginia Beach residence.

19. In 2020 and thereafter, and for some time prior, Kelly's father, who lived in Boynton Beach, Florida, suffered from medical conditions which constituted serious health conditions under the FMLA. As a result of those conditions, Mr. Kelly's father required care by others.

20. On about January 24, 2020, Kelly's wife suffered injuries in a car accident in Virginia

Beach, Virginia and on that date, Kelly's wife informed Kelly, who was in Charlotte at work, of the accident. Initially, these injuries were believed not to be serious.

21. On or about January 28, 2020, Kelly spoke to Jones and told Jones, *inter alia*, that Kelly's mother's 86th birthday was the previous day, but it was a difficult day for her as Kelly's father's illness was getting more challenging for her to handle. Kelly also told Jones that he would need to be absent from work during the year to help with the care of his father.

22. On or about January 28, 2020, Kelly notified the City, through UNUM, which provided FMLA administrative services to the City, that he would need FMLA leave to provide care for his father due to his father's serious health condition from March 30, 2020 through June 29, 2020.

23. On or about January 28, 2020, Kelly learned that his wife would require back surgery as a result on the January 24, 2020 car accident, and that he also would be needed in Virginia Beach to provide care to her during her recovery.

24. On or about January 29, 2020, Kelly reassessed the period of time during which he would need FMLA leave, and withdrew his January 28, 2020 request for FMLA leave, and had a discussion with Amanda Dillard ("Dillard"), who was the Human Resource Manager in the City's Human Resource Department, about Kelly's needs to provide care to his father and his wife.

25. On or about January 29, 2020, Kelly met with Schneider and in that meeting had a discussion with Schneider about Kelly's need to provide care to both his father and his wife.

26. On or about January 30, 2020, Kelly called Jones to request a face-to-face meeting concerning Kelly's need to provide care to both his father and his wife. Kelly and Jones agreed to meet on January 31, 2020 after work.

5

27. On or about January 31, 2020 at approximately 5:00 PM Jones told Kelly he was tied up in meetings, so Jones and Kelly agreed to speak by phone that evening. Jones and Kelly spoke by phone that evening at approximately 6:30 PM. During the call Kelly discussed with Jones that his wife's injuries from the accident were severe, discussed with Jones that Kelly's mother required assistance caring for Kelly's father, and informed Jones that Kelly would be taking FMLA leave to provide care to for his wife and his father. Jones asked Kelly to keep Schneider advised of when Kelly would be on FMLA leave. This was the last time Jones spoke to Kelly.

28. Both Jones and Schneider were aware of the FMLA's prohibition against discrimination toward employees who utilize leaves of absences under the Act, including the requirement of reinstatement to the same or equivalent position with the same pay, benefits, and terms and conditions upon returning from leave. Further both Jones and Schneider were aware that the FMLA prohibits using the taking of a medical leave of absence under the FMLA as a negative factor in making employment decisions against an employee who utilizes leave under the Act. Jones and Schneider willfully ignored the Act's prohibitions with regard to Kelly.

29. On or about February 2, 2020, Kelly and Schneider communicated about upcoming meetings Kelly would be unable to attend due to Kelly's upcoming FMLA leave and projects being handled by Kelly which might require attention during Kelly's upcoming FMLA leave. At this time, Schneider informed Kelly that Jones had changed the reporting structure and that Kelly would no longer report to Jones, and that instead, Kelly would report to Schneider. Prior to this communication, Schneider and Jones had been peers.

30. Because of the needs of his father, Kelly, with the approval of the City, took leave beginning February 10, 2020, which the City designated as continuous FMLA leave.

31. On or about February 10, 2020, Kelly and Schneider exchanged messages regarding

Kelly's wife's need for care by Kelly as a result of her accident.

32. On or about February 11, 2020, Kelly informed Schneider that Kelly would follow up with Kelly's wife regarding FMLA leave.

33. On or about February 13, 2020, Kelly submitted to the City, via UNUM, a request for continuous FMLA leave to provide care to his father due to his father's serious health condition through May 11, 2020. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted.

34. On or about February 14, 2020, Dillard confirmed Kelly would be on FMLA leave until May 11, 2020, and that on May 11, 2020 Kelly would return to work.

35. On or about February 27, 2020, Kelly submitted to the City a request to change the original FMLA continuous leave for his father from twelve weeks to six weeks due to complications caused by the COVID-19 pandemic. Kelly's new return to work date after six weeks continuous FMLA leave was March 23, 2020.

36. On or about February 27, 2020, Kelly submitted to the City a request for intermittent FMLA leave through August 16, 2020 to provide care to his wife.

37. On or about March 20, 2020, Schneider informed Kelly that the government center was closed due to the COVID-19 pandemic and that Kelly should plan on working remotely.

38. On or about March 22, 2020, Kelly returned to work from continuous FMLA leave. At that time Kelly had used 6 weeks of FMLA leave for the FMLA leave year then in effect.

39. On or about March 23, 2020, Kelly attempted to contact Schneider but Schneider replied that Schneider was not available.

40. On or about March 24, 2020, Kelly again attempted to contact Schneider but Schneider

7

replied that Schneider was not available but that he may be available on Thursday, March 26, 2020. Kelly replied, "Okay. Please let me know if there's anything I can do to help."

41. On or about March 27, 2020, Kelly left a message for Schneider to let Kelly know if Kelly could help with anything.

42. On or about May 1, 2020, Dillard sent Kelly an email stating Kelly's annual automobile allowance of $5,700 was being discontinued by the City effective April 25, 2020.

43. On or about May 1, 2020, Schneider sent Kelly an email with a bi-weekly meeting request beginning May 21, 2020.

44. On or about May 21, 2020, after Kelly and Schneider discussed the health and needs of Kelly's wife and Kelly's father, Schneider told Kelly that, effective July 1, 2023, Schneider was restructuring the department, that Kelly's title was being changed, that Kelly was being relieved of all supervisory responsibilities, and that Kelly's annual salary was being reduced from $173,400 to $156,060. In effect, this was a demotion for Kelly.

45. At the time of their May 21, 2020 discussion, Schneider provided no explanation for or what prompted the reason for a departmental restructuring other than to state that it was allegedly needed to bring salaries within the department more in line. However, only Kelly's salary was negatively affected by the so-called "restructuring" within the department.

46. On or about June 4, 2020, Schneider cancelled a one-on-one meeting between Schneider and Kelly to review documents concerning best practices for the City's website and a peer review of that website.

47. Prior to June 10, 2020, Kelly had been invited to and had attended senior

leadership team meetings which occurred bi-weekly, and he attended Communication

Department meetings. Beginning on or about June 10, 2020, however, Kelly was excluded from

all such meetings.

48. On or about July 1, 2020, the City officially changed Kelly's title from Chief Marketing

Officer to Brand Manager. Kelly was relieved of all supervisory responsibilities, Kelly's annual

salary was reduced from $173,400 to $156,060, and Kelly reported to Schneider.

49. Jones and Schneider willfully and discriminatorily determined to demote and diminish

Kelly's role within the department because of his use of medical leaves of absence under the

FMLA. The City ratified the discriminatory acts of Jones and Schneider in violation of the

FMLA.

50. On or about July 2, 2020, Kelly notified the City that he would need intermittent FMLA

leave from July 30, 2020 through August 16, 2020 to provide care to Kelly's wife due to his

wife's injuries and related surgery.  At the time of this request, Kelly had used six weeks and

eight hours of FMLA leave, and had 5 weeks and 32 hours of FMLA leave remaining in his

FMLA 12-month leave period then in effect. Kelly was entitled to the requested FMLA leave,

and his FMLA leave request was granted. Kelly ultimately used 2 weeks and 3 hours of the

intermittent leave authorized under his July 2, 2020 request.

51. On or about July 2, 2020, Schneider cancelled a previously scheduled one-on-one

meeting of Schneider and Kelly concerning the City's website.

52. On or about July 16, 2020, Kelly sent to Schneider a website audit sample for the City's

website, and Kelly resent to Schneider the previously sent documents concerning best practices

for the City's website and a peer review of that website.

53. On or about July 30, 2020, Schneider asked Kelly not to speak to anyone about the work

on the City's website, and informed Kelly that Schneider would discuss the website with the Information Technology Department and get back to Kelly.

54. On or about August 13, 2020, Schneider cancelled a scheduled one-on-one meeting of Schneider and Kelly concerning the City's website and told Kelly it would be rescheduled.

55. On or about August 27, 2020, Schneider again cancelled a scheduled one-on-one meeting of Schneider and Kelly.

56. On or about September 10, 2020, Schneider cancelled another scheduled one-on-one meeting of Schneider and Kelly and told Kelly it would be rescheduled.

57. On or about September 17, 2020, Kelly's father accidentally fell and broke his collar bone, and as a result was hospitalized and needed ongoing care.

58. On or about September 17, 2020, Kelly sent to Schneider an email, which Schneider read, informing Schneider: "My dad fell, had to go to the hospital - he has a broken collar bone. We need to come up with a 24/7 care plan to keep him safe. I am going to submit paperwork for intermittent FMLA to help out. I'll keep you posted."

59. Shortly after his father's September 17, 2020 fall, Kelly notified the City that he would need intermittent FMLA leave to provide care to his father from October 8, 2020 through October 7, 2021. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted.

60. On or about October 7, 2020, Kelly submitted to the City, via UNUM, a request for intermittent FMLA leave to provide care to his father due to his father's serious health condition. Kelly was entitled to the requested FMLA leave, and his FMLA leave request was granted for intermittent FMLA leave between October 8, 2020 through October 7, 2021.

61. At the time of his October 7, 2020 FMLA leave request, Kelly had approximately 4

weeks and 37 hours of FMLA leave remaining in his FMLA 12-month leave period then in effect.

62. Beginning on or about October 8, 2020, Kelly took intermittent FMLA leave to provide care to his father.

63. On or about October 22, 2020, Schneider again cancelled a scheduled one-on-one meeting of Schneider and Kelly.

64. On or about November 5, 2020, Schneider again cancelled a scheduled one-on-one meeting of Schneider and Kelly.

65. On November 16, 2020, Kelly sent to Schneider an email, which Schneider read, informing Schneider:

My dad fell again over the week-end so we have set up a rotating schedule among family members to provide continuous care. We plan to assess the situation every 30 days to make adjustments/modifications as needed. I will keep you updated if needs/plans change. I plan to use vacation days or FMLA-sick leave for these days. Right now my planned days are as follows:

12/3/20-12/8/20 Thursday-Tuesday
1/4/21 - 1/6/21 Monday- Wednesday
2/11/21 – 2/16/21 Thursday – Tuesday

I will adjust and / or make myself available if work needs require. Please let me know if you foresee any issues with these dates.

66. On November 19, 2020 – a mere 3 days after he notified Schneider of planned absences under the FMLA - Schneider met with Kelly over the phone, and in that meeting informed Kelly that Kelly's position was being eliminated effective March 1, 2021. Kelly was told no other positions were being affected.

67. On November 20, 2020 at 8:21 AM, Dillard sent to Kelly an email with an attached letter

from Dillard to Kelly dated November 19, 2020, which letter stated, *inter alia*: "Your position as Brand Manager, with the City of Charlotte has been eliminated. A transition exit plan has been established. Your separation of employment date will be March 1, 2021."

68. Kelly's employment with the City was terminated by the City on or about March 1, 2021.

69. The City, by and through the acts of Jones and Schneider, eliminated Kelly's position and terminated Kelly's employment because of and in retaliation for his use of leave under the FMLA. Further, Jones and Schneider were aware of and expected Kelly to continue taking FMLA leave in the future. In sum, the Defendants used Kelly's use of protected leave under the FMLA as a negative factor in the decision to eliminate his position and to terminate his employment with the City of Charlotte. Further, Jones and Schneider desired to replace Kelly with a person or persons performing Kelly's job duties who would not need comparable FMLA leave in the future. Defendants desired to conceal its interference with Kelly's use of FMLA leave and its discrimination against Kelly for taking FMLA leave by claiming that the elimination of Kelly's position was for legitimate, non-discriminatory reasons. This claim is false.

70. The Defendants' willful decision to terminate Kelly's employment through an alleged job elimination was a pretext for unlawful discrimination against Kelly for taking FMLA leave and constitutes retaliation, as well as an unlawful interference with Kelly's future use of FMLA leave.

71. Kelly would have continued in his employment with the City, but for Defendants' unlawful discrimination, retaliation, and unlawful interference.

72. On or about December 24, 2020, Kelly submitted to Defendant City an application for

employment as a Deputy Director of Communications. This position was posted by Defendant City on or about December 7, 2020 – within 2 weeks of Schneider's notification to Kelly that his position was to be eliminated.

73. Kelly was qualified for the Deputy Director of Communications position and had been performing all of the major duties and responsibilities of the position prior to the date Schneider notified him that his employment would be terminated. Further, Kelly met and exceeded the minimum and preferred qualifications for the position of Deputy Director of Communications.

74. Between December 24, 2020 and February 25, 2021, Kelly received no response or communications from Defendant in response to his application for the Deputy Director of Communications position.

75. Upon information and belief, as of February 25, 2021 the Deputy Director of Communications position had not been filled.

76. On February 25, 2021 at 2:34 PM Kelly sent an email to Dillard which stated: "I applied for the deputy director Comms job posting on 12/24 as the duties were in line with my experience and prior responsibilities at the city. I thought this would be a good way to help Team CLT and to assume a new role given I was on FMLA. Is my application still under consideration?"

77. Kelly received no response to his February 25, 2021email to Dillard, and received no communications whatsoever from Defendant in response to his application for the Deputy Director of Communications position until on or about April 12, 2021.

78. On or about April 12, 2021, Kelly received an email from Dillard regarding the Deputy Director of Communications job, in which Dillard stated, "After careful consideration, we have decided to pursue other candidates."

79. Upon information and belief, Kelly was the most qualified candidate for the position of Deputy Director of Communications.

80. Defendants did not offer the Deputy Director of Communications position to Kelly and hired other, less qualified individual(s) to fill that position who had no known present or future need to utilize leave under the FMLA.

81. Defendants did not offer the Deputy Director of Communications position to Kelly, and in fact, refused to genuinely consider his application for that position because of Kelly's use of continuous and intermittent leave under the FMLA leave and because the Defendants expected Kelly to continue taking continuous or intermittent leave to care for his family members pursuant to the FMLA leave in the future.

82. Defendants' denial of the Deputy Director of Communications position to Kelly was a pretext for unlawful discrimination and/or retaliation against Kelly for taking FMLA leave and constitutes unlawful interference with Kelly's future use of FMLA leave.

83. Kelly would have been selected for the Deputy Director of Communications position but for Defendants' unlawful discrimination and interference.

84. At the time of Kelly's termination and at the time of the denial of Kelly's application for the Deputy Director of Communications position, the City was the fifteenth or sixteenth largest city by population in the United States, had an annual budget of 2.63 billion dollars, had an extensive human resources department, which was thoroughly knowledgeable of FMLA law, had an experienced city attorney, Patrick Baker, had a senior assistant city attorney, Mindy Sanchez, whose sole role was to serve as legal counsel to the City's human resources department and on employment issues, and had extensive experience with and knowledge of the FMLA, the rights

of employees thereunder including Kelly, the obligations of the City under the FMLA, and the FMLA's prohibitions against discrimination and interference.

85. At the time of Kelly's termination of employment and at the time of the denial of Kelly's application for the Deputy Director of Communications position, Jones had more than 20 years of public service experience at the city and state level, including serving as the city manager, assistant city manager and budget director for the City of Norfolk, Virginia, the deputy chief administrative officer for the City of Richmond, Virginia, and the deputy secretary of finance for two governors in the Commonwealth of Virginia, and possessed a bachelor's degree in public administration from James Madison University and a master's degree in public administration from Virginia Commonwealth University, and, upon information and belief, had extensive experience with and knowledge of the FMLA, the rights of employees thereunder including Kelly, the obligations of the City under the FMLA, and the FMLA's prohibitions against discrimination, retaliation, and interference.

86. At the time of Kelly's termination of employment and at the time of the denial of Kelly's application for the Deputy Director of Communications position, Schneider had had extensive experience with and knowledge of the FMLA, the rights of employees, including Kelly, thereunder, the obligations of the City under the FMLA, and the FMLA's prohibitions against discrimination, retaliation, and interference.

87. Defendants' unlawful discrimination, retaliation, and interference was in conscious, intentional, deliberate and willful violation of the FMLA, and was in reckless disregard for Kelly's rights and Defendants' obligations under the FMLA.

88. Following the unlawful termination of his employment with the City and its refusal to

employ him as Deputy Communications Director, Kelly has been unable, despite efforts to mitigate his damages, to locate employment comparable to his former employment with the City. As a direct and proximate result of the Defendants' decision to terminate his employment and to deny him employment because of his past and prospective use of FMLA, Kelly has sustained damages in the form of lost wages and benefits, including retirement benefits and other perquisites of employment.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT CITY
**(Violation of FMLA-Discriminatory Terms and Conditions and Unlawful Termination)**

89. Kelly realleges and incorporates by reference herein Paragraphs 1 through 88 of this First Amended Complaint.

90. The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise, or attempted exercise, of any rights under [the Act]." 29 U.S.C. § 2615(a). Actions that constitute interference include "discouraging an employee from using such leave" and "using the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." See, 29 C.F.R. § 825.220(a)-(c).

91. In addition, the FMLA prohibits a covered employer from discriminating against any individual for exercising his rights under the Act, including the request for and the taking of protected leave.

92. Defendant City, by and through Jones and Schneider, discriminated and retaliated against Kelly because of his use of protected medical leave in violation of the FMLA, 29 U.S.C. § 2615(a)(2), by (a) changing Kelly's direct supervisor from Jones to Schneider, (b) changing Kelly's title from Chief Marketing Officer to Brand Manager, (c) removing all supervisory responsibilities from Kelly's position, (d) not permitting him to return to the office when his peers were beginning to return to the workplace following the pandemic, (e) reducing Kelly's

annual salary from $173,400 to $156,060, (f) eliminating Kelly's position as Brand Manager, and (g) terminating Kelly's employment.

93. Kelly's need for and use of intermittent leave under the FMLA was used by Defendant City as a negative factor in the decisions affecting his employment with the City.

94. Defendant City ratified the acts of its officials, Defendants Jones and Schneider, in connection with the terms and conditions of Kelly's employment and his termination of employment.

95. As a direct and proximate result of the City's acts and omission, Kelly suffers and continues to suffer present and future lost wages and employee benefits he would have earned as an employee of the City.

96. The acts and omissions of the City were willful, deliberate and intentional. Accordingly, Kelly is entitled to have and recover of Defendant City liquidated damages as provided by the FMLA.

WHEREFORE, Kelly demands judgment against Defendant City for violation of the FMLA and relief as described below in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT CITY
### (Violation of FMLA – Unlawful Interference)

97. Kelly realleges and incorporates by reference herein Paragraphs 1 through 96 of this First Amended Complaint.

98. Defendant City, by and through Jones and Schneider, unlawfully interfered with Kelly's use of intermittent medical leave in violation of the FMLA, 29 U.S.C. § 2615(a)(2), by (a) changing Kelly's direct supervisor from Jones to Schneider, (b) changing Kelly's title from Chief Marketing Officer to Brand Manager, (c) removing all supervisory responsibilities from Kelly's position, (d) not permitting him to return to the office when his peers were beginning to return to

17

the workplace following the pandemic, (e) reducing Kelly's annual salary from $173,400 to $156,060, (f) eliminating Kelly's position as Brand Manager, (g) terminating Kelly's employment, and (h) refusing to consider him and/or to employ him for the position of Deputy Communications Director.

99. Defendant City's acts were meant to discourage Kelly's use of intermittent FMLA and to interfere with his use of protected medical leave at that time, as well as his future use of such leave.

100. Defendant City ratified the acts and omissions of its officials, Defendants Jones and Schneider.

101. As a direct and proximate result of the City's unlawful interference, Kelly suffers and continues to suffer present and future lost wages and employee benefits he would have earned as an employee of the City.

102. The acts and omissions of the City were willful, deliberate and intentional.  Accordingly, Kelly is entitled to have and recover of Defendant City liquidated damages as provided by the FMLA.

WHEREFORE, Kelly demands judgment against Defendant City for violation of the FMLA and relief as described below in the Prayer for Relief.

## <u>THIRD CLAIM FOR RELIEF AGAINST DEFENDANT CITY</u>
### (Violation of FMLA-Discriminatory/Retaliatory Refusal to Hire)

103. Kelly realleges and incorporates by reference herein Paragraphs 1 through 102 of this First Amended Complaint.

104. Defendant City discriminated and/or retaliated against Kelly for his use of FMLA leave in violation of the FMLA, 29 U.S.C. § 2615(a)(2), by actions, including but not necessarily limited to denying Kelly employment as the Deputy Director of Communications.

18

Kelly's education and experience made him the most qualified candidate for the position of Deputy Director of Communications. Instead of preserving Kelly's employment, Defendant, by and through Jones and Schneider, refused to consider Kelly as a candidate to fill this available position, because of his use and anticipated use of leave under the FMLA.

105. The City ratified the discriminatory acts and omissions of its officials, Jones and Schneider.

106. As a direct and proximate result of the discriminatory acts of the City, Kelly suffers and continues to suffer present and future lost wages and employee benefits he would have earned as the Deputy Director of Communications.

107. The acts and omissions of the City were willful, deliberate and intentional. Accordingly, Kelly is entitled to have and recover of Defendant City liquidated damages as provided by the FMLA.

WHEREFORE, Kelly demands judgment against Defendant City for violation of the FMLA and relief as described below in the Prayer for Relief.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHNEIDER
**(Violation of FMLA – Interference, Discriminatory Termination & Refusal to Hire)**

108. Kelly realleges and incorporates by reference herein Paragraphs 1 through 107 of this First Amended Complaint.

109. At all times relevant to this First Amended Complaint, Defendant Schneider acted in his individual capacity as Kelly's "employer" as that term is defined by Section 101 of the Family & Medical Leave Act of 1993, as amended, 29 U.S.C. § 611(4)(A)(ii)(I).

110. Defendant Schneider discriminated and/or retaliated against Kelly in the terms and conditions of his employment because of his then present and anticipated use of leave under the

FMLA, by (a) changing Kelly's direct supervisor from Jones to Schneider, (b) changing Kelly's title from Chief Marketing Officer to Brand Manager, (c) removing all supervisory responsibilities from Kelly's position, (d) not permitting him to return to the office when his peers were beginning to return to the workplace following the pandemic, (e) reducing Kelly's annual salary from $173,400 to $156,060, (f) eliminating Kelly's position as Brand Manager, (g) terminating Kelly's employment, and (h) refusing to consider him and/or to employ him for the position of Deputy Communications Director.

111. Further, Defendant Schneider unlawfully interfered with Kelly's present and future use of FMLA leave by terminating his employment and by unlawfully refusing to employ him in an available position for which he was qualified.

112. Kelly's need for and use of intermittent leave under the FMLA was used by Schneider as a negative factor in the decisions negatively affecting his employment with the City.

113. As a direct and proximate result of Defendant Schneider's acts and omission, Kelly suffers and continues to suffer present and future lost wages and employee benefits he would have earned as an employee of the City.

114. The acts and omissions of Defendant Schneider were willful, deliberate and intentional. Accordingly, Kelly is entitled to have and recover of Schneider liquidated damages as provided by the FMLA.

WHEREFORE, Kelly demands judgment against Defendant Schneider for violation of the FMLA and relief as described below in the Prayer for Relief.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT JONES
**(Violation of FMLA – Interference, Discriminatory Termination & Refusal to Hire)**

115. Kelly realleges and incorporates by reference herein Paragraphs 1 through 114 of this First Amended Complaint.

116. At all times relevant to this First Amended Complaint, Defendant Jones acted in his individual capacity as Kelly's "employer" as that term is defined by Section 101 of the Family & Medical Leave Act of 1993, as amended, 29 U.S.C. § 611(4)(A)(ii)(I).

117. Defendant Jones discriminated and/or retaliated against Kelly in the terms and conditions of his employment because of his then present and anticipate use of leave under the FMLA, by (a) changing Kelly's direct supervisor from Jones to Schneider, (b) changing Kelly's title from Chief Marketing Officer to Brand Manager, (c) removing all supervisory responsibilities from Kelly's position, (d) not permitting him to return to the office when his peers were beginning to return to the workplace following the pandemic, (e) reducing Kelly's annual salary from $173,400 to $156,060, (f) eliminating Kelly's position as Brand Manager, (g) terminating Kelly's employment, and (h) refusing to consider him and/or to employ him for the position of Deputy Communications Director.

118. Further, Defendant Jones unlawfully interfered with Kelly's present and future use of FMLA leave by terminating his employment and by unlawfully refusing to employ him in an available position for which he was qualified.

119. Kelly's need for and use of intermittent leave under the FMLA was used by Jones as a negative factor in the decisions negatively affecting his employment with the City.

120. As a direct and proximate result of Defendant Jones's acts and omission, Kelly suffers and continues to suffer present and future lost wages and employee benefits he would have earned as an employee of the City.

121. The acts and omissions of Defendant Jones were willful, deliberate and intentional. Accordingly, Kelly is entitled to have and recover of Jones liquidated damages as provided by the FMLA.

WHEREFORE, Kelly demands judgment against Defendant Jones for violation of the FMLA and relief as described below in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Brent J. Kelly respectfully requests the Court to enter a Judgment in his favor against the Defendants, jointly and/or severally, and award the following relief:

a.      Back pay in an amount of $601,120 or such other amount as may be proven by the evidence at trial.

b.      Liquidated damages in an amount of $601,120 or such other amount as may be proven by the evidence at trial;

c.      Reinstatement to Kelly's prior position or to a comparable position with equivalent wages and benefits and restoration of seniority and service credit, or in the alternative, front pay in the amount of $957,738 or such other amount as may be proven by the evidence at trial.

d.      Pre-judgment interest in an amount to be determined at trial;

e.      Reasonable attorney fees, reasonable expert witness fees, and other costs of this action; and

f.      Such other and further relief authorized as the interests of justice may require.

## **JURY TRIAL DEMAND**

The Plaintiff, Brent J. Kelly, demands a trial by jury on all issues of fact.

Respectfully submitted this the 26th day of February, 2024.

/s/ Jenny L. Sharpe
Jenny L. Sharpe
Attorney for the Plaintiff
N.C. State Bar No. 13698

**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, North Carolina 28277
Telephone: (704) 944-3272
Facsimile: (704) 944-3201
Email: sharpeattorney@gmail.com

## CERTIFICATE OF SERVICE

The undersigned counsel herby certifies that she has electronically filed Plaintiff's First Amended Complaint with the Clerk of Court using the CM/ECF system, which shall send notification of the filing of same to the following counsel of record for the Defendants:

Mindy B. Sanchez
Roger A. McCalman
**CITY OF CHARLOTTE.**
600 East Fourth Street, 5th Floor
Charlotte, North Carolina 28202
Email: Mindy.Sanchez@Charlottenc.gov
Email: Roger.McCalman@Charlottenc.gov

This the 26th day of February, 2024.

/s/ Jenny L. Sharpe
Jenny L. Sharpe
Counsel for Plaintiff