IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:24-CV-0008-RJC-SCR

| | |
|---|---|
| **BRENT J. KELLY,**<br><br>**Plaintiff,**<br>v.<br><br>**CITY OF CHARLOTTE, NORTH CAROLINA and MARCUS D. JONES and JASON M. SCHNEIDER, individually**<br><br>**Defendants.** | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Defendants City of Charlotte ("City"), Marcus D. Jones ("Jones"), and Jason M. Schneider ("Schneider") (collectively referred to hereinafter as "Defendants"), by and through counsel, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit this Memorandum in Support of their Motion to Dismiss.

## SUMMARY OF ARGUMENTS

I. **Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, all claims against Jones and Schneider (Fourth and Fifth Claims for Relief) should be dismissed because the FMLA does not allow for suits against public officials in their individual capacities.**

II. **Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims (First through Fifth Claims for Relief) should be dismissed for failure to state a claim to the extent that those claims are premised on actions or FMLA violations that occurred outside of the applicable statute of limitations.**

III. **Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims of FMLA Interference against all Defendants (Second, Fourth, and Fifth Claims for Relief) should be dismissed for failure to state a claim.**

1

**IV.    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff has failed to state a claim for FMLA retaliation or discrimination against Jones for terminating Plaintiff's employment and refusing to hire him for the Deputy Communications Director position (Fifth Claim for Relief).**

## PROCEDURAL HISTORY AND RELEVANT FACTS

Only for purposes of the issues addressed in Defendants' Motion to Dismiss and in this Memorandum in support thereof, the allegations in the Plaintiff's First Amended Complaint are accepted as true.

The allegations in Plaintiff's First Amended Complaint can be summarized as follows:

- On April 24, 2017, Plaintiff began employment with the City as Chief Marketing Officer and reported to Jones. (Doc. 19, Amended Complaint, ¶¶ 13-14).[1]

- Beginning in September 2019, as Chief Marketing Officer, Plaintiff worked with Schneider who was the Communications Director who also reported to Jones. (¶15).

- In 2020, Plaintiff's father suffered from medical conditions which constituted serious health conditions under the FMLA and required care by others. (¶ 19).

- On or about January 24, 2020, Plaintiff's wife suffered injuries in a car accident in Virginia. Initially, these injuries were believed not to be serious. (¶ 20).

- On or about January 28, 2020, Plaintiff told Jones that Plaintiff's father's illness was getting more challenging to handle and that Plaintiff would need to be absent from work throughout the year to help with the care of his father. (¶ 21).

- On or about January 28, 2020, Plaintiff notified the City, through UNUM, which provided administrative services to the City, that he needed FMLA leave to provide care for his father from March 30, 2020 through June 29, 2020. (¶ 22).

- On or about January 29, 2020, Plaintiff <u>withdrew</u> his January 28, 2020, FMLA leave request and discussed his needs to care for his wife and father with Schneider and the City's Human Resources Manager, Dillard. (¶ 24, 25).

---

[1] All subsequent Paragraph (¶) references will refer to the numbered paragraphs in the Amended Complaint, Doc. 19.

- On January 31, 2020, Plaintiff told Jones that he would be taking FMLA leave to take care of his wife and father. Jones told Plaintiff to keep Schneider advised when Plaintiff would be on FMLA leave. This was the last time that Jones spoke with Plaintiff. (¶ 27).

- On or about February 2, 2020, Schneider informed Plaintiff that Jones had changed the reporting structure and that Kelly would no longer report to Jones, and that instead, Kelly would report to Schneider. (¶ 29).

- Beginning February 10, 2020, Plaintiff took continuous, City-approved FMLA leave to care for his father. (¶ 30).

- On or about February 13, 2020, Plaintiff submitted to the City, via UNUM, a request for continuous FMLA leave to provide care for his father through May 11, 2020, and the request was granted. (¶¶ 33-34).

- On or about February 27, 2020, Plaintiff submitted a request to change the original 12 week FMLA continuous leave to care for his father to 6 weeks due to complications caused by the COVID-19 pandemic, and Plaintiff's new return to work date would be March 23, 2020. (¶ 35).

- On or about February 27, 2020, Plaintiff submitted a request to the City for intermittent FMLA to provide care for his wife. (¶ 36).

- On or about March 22, 2020, Schneider told Plaintiff that the government center was closed due to COVID-19 and that he should plan to work remotely. (¶ 37).

- On or about March 22, 2020, Plaintiff returned to work from his continuous FMLA leave. At that time, he had used 6 weeks of FMLA leave for the FMLA leave year then in effect (¶ 38).

- On or about May 21, 2020, Schneider informed Plaintiff that effective July 1, 2020, that Schneider was restructuring the department, that Plaintiff's title was being changed, and that Plaintiff's salary was being reduced to bring salaries in the department more in line. (¶¶ 44-45).

- On July 1, 2020, Plaintiff's title changed to Brand Manager, was relieved of supervisory responsibilities, and his salary was reduced. (¶ 48).

- On July 2, 2020, Plaintiff notified the City that he would need intermittent FMLA leave from July 30, 2020 through August 16, 2020 to provide care to his wife, and the request was granted. At the time of the request, Plaintiff had used 6 weeks and 8 hours of FMLA leave and had 5 weeks and 32 hours of FMLA leave remaining in his FMLA leave period then in effect. Plaintiff ultimately used 2 weeks and 3 hours of the intermittent leave authorized under his July 2, 2020 request. (¶ 50).

- On or about September 17, 2020, Plaintiff's father fell and broke his collarbone, which required hospitalization and ongoing care. Plaintiff informed Schneider via email, and notified the City that he would need intermittent FMLA leave to care for his father from

3

October 8, 2020, to October 7, 2021.  The request was ultimately granted.  At the time of this request, Plaintiff had approximately 4 weeks and 37 hours of FMLA remaining in his FMLA 12-month leave period then in effect.  (¶¶ 57-61).

- Beginning on or about October 8, 2020, Plaintiff took intermittent FMLA leave to care for his father.  (¶ 62).

- On November 16, 2020, Plaintiff sent Schneider an email stating that he planned to use vacation days or FMLA-sick leave to care for his father for 4 days in December 2020, 3 days in January 2021, and 4 days in February 2021.  (¶ 65).

- On November 19, 2020, Schneider informed Plaintiff that his position was being eliminated effective March 1, 2021.  (¶ 66).

- On November 20, 2020, Dillard (HR) sent Plaintiff an email with an attached letter dated November 19, 2020, informing Plaintiff that his position of Brand Manager had been eliminated and that his separation date would be March 1, 2021.  (¶67).

- On or about December 24, 2020, Plaintiff submitted an application for the position of Deputy Director of Communications, a position that was initially posted on December 7, 2020.  (¶ 72).

- On or about April 12, 2021, Plaintiff received an email from Dillard (HR) stating that he was not selected for the position.  (¶ 78).

## STANDARD OF REVIEW

Rule 12(b)(1) provides for dismissal of a claim where the court lacks jurisdiction over the subject matter of the lawsuit.  The burden of proving subject-matter jurisdiction is on the plaintiff.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  In determining whether subject matter jurisdiction exists, the court must regard the pleadings as "mere evidence" on the issue and may consider evidence outside of the pleadings.  *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  The court should grant a 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *See id.*

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of a

4

Rule 12(b)(6) motion is to test the legal sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Dismissal under 12(b)(6) is proper when it is clear the complaint does not allege facts properly supporting a claim for which relief can be granted. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To avoid dismissal, a plaintiff must present facts where "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Even though the court takes the factual allegations as true, a complaint must contain sufficient evidentiary facts to raise a plausible – as opposed to just conceivable – inference that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 678. As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). While a plaintiff may not be required to plead facts that constitute a prima facie case in order to withstand a motion to dismiss, she is nevertheless required to "set forth facts sufficient to allege each element of [her] claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002).

In evaluating whether a claim is stated, the court should not consider "legal conclusions, elements of a cause of action", "bare assertions devoid of further factual enhancement" and "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet v. Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A complaint must be dismissed where plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

# DISCUSSION

I.  **Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, all claims against Jones and Schneider (Fourth and Fifth Claims for Relief) should be dismissed because the FMLA does not allow for suits against public officials in their individual capacities.**

The FMLA does not allow for suits against public officials in their individual capacity, so the individual claims against Jones and Schneider fail as a matter of law.

The term "employer" is defined in the FMLA in part as follows:

**(4) Employer**

**(A) In general**

The term "employer"—

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes—

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any "public agency", as defined in section 203(x) of this title; and

(iv) includes the Government Accountability Office and the Library of Congress.

**(B) Public agency**

For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2611(4).

Section 203x defines" public agency" as:

"Public agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; or any interstate governmental agency.

29 U.S.C. § 203(x).

The City is a public agency, and Jones and Schneider are employees of a public agency.

The Fourth Circuit has not addressed the issue of whether public agency employees can be sued in their individual capacities under the FMLA. *See Jones v. Sternheimer*, 387 Fed.Appx. 366, 368 (4th Cir. 2010) ("whether the FMLA imposes liability on employee supervisors in their individual capacities is an open question in this circuit").

Other circuits are split on the issue. *See, e.g., Modica v. Taylor*, 465 F.3d 174, 184-87 (5th Cir. 2006) (allowing individual capacity suits against public agency employees); *Mitchell v. Chapman*, 343 F.3d 811, 832-833 (6th Cir. 2003) (FMLA does not allow for individual liability against public employees); *Darby v. Bratch*, 287 F.3d 673, 680-681 (8th Cir. 2002) (allowing for individual liability against public employees); *Wascura v. Carver,* 169 F.3d 683, 685-687 (11th Cir. 1999) (FMLA suits against individual public employees not cognizable).

Furthermore, district courts within the Fourth Circuit are not in agreement. *See, e.g., Smith v. City of Marion*, 4:11-CV-2039, 2012 WL 694314, at *5-6 (January 27, 2012 D. S.C.) (rejecting individual liability); *Sadowski v. U.S. Postal Service,* 643 F. Supp.2d 749, 752-757 (D. Md. 2009) (rejecting individual liability); *Miller v. County of Rockingham*, 5:06CV00053, 2007 WL 990135, at *4-5 (W.D.Va. March 30, 2007) (rejecting individual liability); *Sheaffer v. County of Chatham*, 337 F.Supp.2d 709, 728 (M.D.N.C. 2004) (allowing individual liability); *Cantley v. Simmons*, 179 F.Supp.2d 654, 657-658 (S.D.W.Va. 2002) (allowing individual

liability); *Keene v. Rinaldi*, 127 F.Supp.2d 770, 775-779 (M.D.N.C. 2000) (rejecting individual liability).

The structure of the statute defining "employer" supports Defendants' position on this issue. As succinctly stated by one court:

> First, there are four subsections in the FMLA that each add substance to the term "employer," but the subsections are distinct and independent from each other. Subsection (i) provides a general definition of the term "employer." *See* 29 U.S.C. § 2611(4)(A)(i) ("The term employer ... means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."). Subsections (ii) through (iv) further amplify the term "employer," and each of those subsections begins with the word "includes." Subsection (ii) contains the individual liability provision at issue herein. Subsections (iii) and (iv) both deal with public employers, i.e. "any 'public agency,' " and "the Government Accountability Office and the Library of Congress." *See id.* § 2611(A)(iii), (iv). Thus, the subsection that provides for individual liability (i.e. subsection (ii)) is separated from the subsection that provides for public agency liability (i.e. subsection (iii)).

*See Sadowski*, 643 F. Supp.2d at 754-755.[2]

In addition, as noted by the court in *Keene*:

> In addition to the logical structure of the FMLA's definition of employer, the Court also takes note of regulations developed by the department of labor. Thus, 29 C.F.R. § 825.104 discusses which employers are covered by the FMLA and states that "individuals such as *corporate officers* " may be individually liable. 29 C.F.R. § 825.104(d) (emphasis added). It is significant that the regulation specifically mentions corporate officers, but does not mention mere supervisors. In fact, it does not mention any individuals working for public agencies. Further, the regulation which discusses public agency liability under the FMLA discusses the agency's liability and does not mention individuals. 29 C.F.R. § 825.108. This lack of regulatory discussion of liability for supervisors working for public agencies confirms the Court's conclusion that the FMLA does not impose individual liability upon such persons. In the end, the structure and text of 29 U.S.C. § 2611(4), along with the regulations developed under it, convince the Court that the statute was not intended to make public officials liable in their individual capacities.

---

[2] For the sake of brevity, the entire analysis from *Sadowski* is not included in this brief, but the Defendants urge the court to consider the full analysis as set forth in that opinion as well as the *Smith*, *Miller*, and *Keene* decisions.

> Moreover, an interpretation of the FMLA which would permit a mere supervising employee to be deemed an employer creates an, if not absurd, then an ironic situation where every person in an organization can be an employer of others except the person on the very bottom. By intermingling with and confusing the line between employer and employee, such an interpretation mainly serves to laden FMLA cases with personal disputes and antagonisms and matters of office politics. This result is both unnecessary and contra indicative of the purpose of the FMLA. The goal of the FMLA through subsection (4)(A)(ii) is to make sure that there will be payment for any determined liability.

*Keene*, 127 F.Supp.2d at 776-77.

Furthermore, adding Jones and Schneider as defendants in this case served no purpose other than to annoy and harass them. In this case, the actions of Jones and Schnieder were indivisibly tied to their official duties as representatives of the City, and the real party in interest, the City, is already a party to this lawsuit. Therefore, the inclusion of the City as a party satisfies the goal of "mak[ing] sure there will be payment for any determined liability." *See id.*

For the reasons stated above, all claims against Jones and Schneider should be dismissed with prejudice.

II. **Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims (First through Fifth Claims for Relief) should be dismissed for failure to state a claim to the extent that those claims are premised on actions or FMLA violations that occurred outside of the applicable statute of limitations.**

The FMLA contains a 2-year statute of limitations, 29 U.S.C. § 2617(c)(1), unless the violation is willful, which extends the limitation period to 3 years, 29 U.S.C. § 2617(c)(2). Willful violations occur when the "employer knows or showed reckless disregard [as to] whether its conduct was prohibited [by the FMLA]. *Settle v. S.W. Rodgers Co.*, 182 F.3d 909 (4th Cir. 1999) (unpublished). "Willful violations of the FMLA generally do not occur when an employee's request for FMLA leave has been granted." *Polk v. Mecklenburg County*, No. 3:20-CV-00483,

2021 WL 2636015, at *9, (W.D.N.C. June 25, 2021) (holding that portions of Plaintiff's FMLA claim were time-barred).

In support of the First, Second, Fourth, and Fifth Claims for Relief (*see, e.g.*, ¶¶ 92, 98, 110, 117), Plaintiff has asserted claims of FMLA retaliation, termination, and interference based on:

    (a) changing Kelly's direct supervisor from Jones to Schneider (**February 2, 2020** -- ¶ 29);

    (b) changing Kelly's title from Chief Marketing Officer to Brand Manager (**July 1, 2020** -- ¶ 48);

    (c) removing all supervisory responsibilities from Kelly's position (**July 1, 2020** -- ¶ 48); and

    (d) reducing Kelly's annual salary from $173,400 to $156,060 (**July 1, 2020** -- ¶ 48).

Plaintiff filed his original Complaint on November 5, 2023. (Doc. 1). Every alleged FMLA violation that occurred prior to November 5, 2021 is barred under the 2-year statute of limitation. Every alleged willful FMLA violation that occurred prior to November 5, 2020 is barred under the 3-year statute of limitations. Each of the above-listed alleged FMLA violations that purportedly serve as the basis of Plaintiff's FMLA claims occurred outside of the 2-year and 3-year statute of limitation and are barred regardless of whether the violations were willful or not.

Furthermore, every conceivable claim against Jones is barred by the 2- or 3-year statute of limitations. Plaintiff alleged that on January 31, 2020, he told Jones about his FMLA leave; that Jones told him to keep Schneider apprised of his FMLA leave; and that was the last time he spoke with Jones. ¶ 27. Plaintiff also stopped reporting to Jones and started reporting to Schneider instead on February 2, 2020. ¶ 29. There are no other fact allegations pertaining to Jones. In

short, Jones has not been in communication or involved with Plaintiff since February 2, 2020, so any claim based on that involvement is barred by the statute of limitations.

For the reasons stated above, Plaintiff's claims that are premised on actions or FMLA violations that occurred outside of the applicable statute of limitations should be dismissed with prejudice.

### III. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims of FMLA Interference against all Defendants (Second, Fourth, and Fifth Claims for Relief) should be dismissed for failure to state a claim.

In the Second, Fourth, and Fifth Claims for Relief, Plaintiff purports to assert claims for FMLA interference against the City, Jones, and Schneider. Because Plaintiff's First Amended Complaint admits that none of his FMLA leave requests were denied, Plaintiff's FMLA interference claims fail as a matter of law.

Section 2615(a) (Prohibited acts under the FMLA) provides:

**(a) Interference with rights**

**(1) Exercise of rights**
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

**(2) Discrimination**
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).

To make out an FMLA interference claim, Plaintiff must show: (1) that he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm. *See Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir.

2015). Such a claim offers no relief "unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002).[3]

"For an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Stairwalt v. TIAA*, No. 3:17-CV-00220, 2018 WL 3745833, at *3 (W.D.N.C. August 7, 2018) ("Plaintiff's admission that none of his FMLA leave requests were denied is sufficient alone to defeat his claim for interference of his FMLA rights.").

Other courts have stated that to prevail on an FMLA interference claim, a plaintiff must show: (1) that she was eligible for the FMLA's protections; (2) the employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) the employer denied his FMLA benefits to which he was entitled. *See Alexander v. Carolina Fire Control Inc.*, 1:14CV74, 2014 WL 3729546, at *3 (M.D.N.C. July 25, 2014).

There are no factual allegations in the First Amended Complaint that plausibly assert that the Defendants denied any of Plaintiff's FMLA requests, avoided responsibility under the FMLA, or discouraged Plaintiff from using FMLA leave.

Furthermore, the allegations in the First Amended Complaint explicitly state that each of Plaintiff's leave requests were granted or approved. *See* Doc. 19, ¶¶ 22 and 24 (FMLA leave request withdrawn); ¶ 30 (continuous FMLA leave approved); ¶¶ 33-36 (FMLA leave request granted); ¶ 50 (FMLA leave request granted); and ¶¶ 59-60, 62 (FMLA leave request granted).

---

[3] Plaintiff's First Amended Complaint seems to conflate interference claims with retaliation claims. The Fourth Circuit addresses claims of retaliation for taking FMLA as retaliation claims under § 2615(a)(2) rather than interference claims under § 2615(a)(1). *See Fry v. Rand Constr. Corp.*, 964 F.3d 239, 245 (4th Cir. 2020); *Fortune v. Gaylor Electric, Inc.*, No. 1:19 CV 346, 2020 WL 6038295, at *5 (W.D.N.C. May 28, 2020) (collecting cases and concluding that the taking of leave as a negative factor in employment actions as a claim for retaliation, not interference).

Because Plaintiff has failed to assert plausible facts to establish an FMLA interference claim, the Second, Fourth, and Fifth causes of action should be dismissed with prejudice.

IV. **Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff has failed to state a claim for FMLA retaliation or discrimination against Jones for terminating Plaintiff's employment and refusing to hire him for the Deputy Communications Director position (Fifth Claim for Relief).**

In his Fifth Claim for Relief, Plaintiff purports to allege an FMLA retaliation claim against Jones in his individual capacity.

As set forth in more detail below, Plaintiff's First Amended Complaint fails to state a legal claim for the following reasons: (1) Plaintiff has failed assert any plausible facts that Jones knew about Plaintiff's claimed protected activity; (2) Plaintiff has failed to assert any plausible facts that Jones (either with or without knowledge of any protected activity) (a) made the decision to eliminate his position and terminate Plaintiff and (b) made the decision not to hire Plaintiff for the Deputy Director of Communications position; and (3) there is no close temporal connection between Jones' awareness of Plaintiff's claimed protected activity and (a) Plaintiff's November 2020 job elimination and (b) the City's April 2021 failure to hire Plaintiff.

To state a claim for retaliation under the FMLA capable of surviving a motion to dismiss, Plaintiff must allege facts sufficient to permit the court to plausibly or reasonably infer that (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was causally connected to the protected activity. *See Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citing the elements of an FMLA retaliation claim).

Assuming, *arguendo*, that Plaintiff has satisfied the first two requirements, Plaintiff has failed to establish the third requirement, causation.

### A. Jones did not know of Plaintiff's protected activity

To satisfy the causation element, Plaintiff must show that Jones knew of Plaintiff's protected activity and that Jones was the relevant decision-maker who fired or refused to hire Plaintiff because of Plaintiff's protected activity. *See Roberts v. Gestamp West Virginia, LLC*, 45 F.4th 726, 738-739 (4th Cir. 2022) (FMLA retaliation claim failed where the person who made the termination decision did not know of the FMLA leave); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (plaintiff must prove that the defendant knew that plaintiff engaged in a protected activity); *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that he plaintiff engaged in a protected activity is absolutely necessary to establish the third element [causation]."); *Taylor v. Rite Aid Corp.*, 993 F.Supp.2d 551, 567 (D. Md. 2014) ("To show a causal connection, a plaintiff must show the defendant knew of plaintiff's protected activity.").

Here, Plaintiff has made only conclusory allegations and has failed to assert fact-based claims that Jones knew that Plaintiff had engaged in protected activity. The only allegations that come close are:

- Paragraph 21 -- "On or about January 28, 2020, . . . Kelly also told Jones that he would need to be absent from work during the year to help with the care of his father." ¶ 21; and
- Paragraph 27 -- "On or about January 31, 2020, . . . Kelly . . . informed Jones that Kelly would be taking FMLA leave to provide care for his wife and father. Jones asked Kelly

to keep Schneider advised of when Kelly would be on FMLA leave. This was the last time Jones spoke to Kelly." ¶ 27.

Plaintiff's January 31, 2020 conversation with Jones (¶ 27) and February 2, 2020 change of reporting structure from Jones to Schneider (¶ 29) occurred nearly 10 months before Plaintiff was terminated, nearly 11 months before he applied for the Deputy Director of Communications position, and nearly 15 months before he was not selected for the position.

There are no other factual allegations asserting that Jones had any knowledge of any of the actual leave requests or actual periods of leave that Plaintiff took throughout the year. In fact, every allegation pertaining to any individual's knowledge of Plaintiff's leave requests or actual leave throughout the year 2020 pertained to Schneider or others, not Jones. *See, e.g.,* Doc. 19, ¶¶ 22, 24, 25, 29-38, 44, 50, 58, 59, 60, 65 (Plaintiff's leave communications with Schneider, human resources personnel with the City, or UNUM, the entity that provided FMLA administrative services for the City).[4]

> B. <u>Even if Jones had knowledge of Plaintiff's FMLA leave, Jones did not terminate or refuse to hire Plaintiff.</u>

Even if Jones knew about FMLA's leave requests and leave periods (which is denied and was not alleged), Plaintiff has failed to assert any facts that allege that Jones was the person who terminated or refused to hire Plaintiff.

In the First Amended Complaint, Plaintiff alleged that Schneider informed Plaintiff on November 19, 2020 that his position was being eliminated effective March 1, 2021. ¶ 66, 67,

---

[4] Paragraph 49 is a non-fact based conclusory allegation.

and 68 (regarding notification of termination). Plaintiff has alleged no facts that Jones was involved in that decision.

Similarly, in the First Amended Complaint, Plaintiff alleged that he was not offered the position of Deputy Director of Communications (¶ 80), a position that reported directly to Schneider who was the Communications Director for the City (¶ 15). Plaintiff has alleged no facts that Jones was involved in that decision either.

> C. <u>There was no close temporal connection between Jones' January 31, 2020 awareness or knowledge of Plaintiff's FMLA activity and (a) Plaintiff's November 19, 2020 termination and (b) the April 12, 2021 refusal to hire Plaintiff.</u>

A plaintiff may satisfy the third element of a retaliation claim by alleging a sufficiently close temporal proximity between the adverse employment action and the protected activity he engaged. *See Yashenko v. Harrah's NC Casino.*, LLC, 446 F.3d 541, 551 (4th Cir. 2006) ("While evidence as to the closeness in time far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.").

Here, the sole basis Plaintiff can rely on to satisfy causation is the proximity of time between Plaintiff engaging in the claimed protected activity (for which Jones was allegedly aware) and the adverse employment action. Plaintiff has alleged no other facts to support causation.

The lengthy lapse between Jones' January 31, 2020 awareness of Plaintiff's alleged FMLA activity and (1) Plaintiff's November 29, 2020, termination (10 months) and (2) April 12, 2021 refusal to hire (15 months) (the alleged adverse employment actions) negates any inference that a causal connection existed as a matter of law. *See, e.g., Perry v. Kappos*, 489 Fed. Appx.

637, 643 (4th Cir. 2012) (holding that a ten week temporal proximity was not sufficient); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F.ed.Appx. 229, 233 (4th Cir. 2006) (unpublished) (concluding that a three-or four-month lapse between the claimed protected activities and discharge was too long to establish a causal connection by temporal proximity alone); *Hoelzer v. Bd. of Governors of the University of North Carolina*, 1:20CV1072, 2022 WL 973069, at *12 (M.D.N.C. March 31, 2022) ("the eight months between Plaintiff taking FMLA leave and her termination is too long to establish a causal relationship on its own").

## CONCLUSION

For the reasons stated herein, the Court should grant Defendants' Motion to Dismiss and dismiss the Plaintiff's claims that are subject to the motion with prejudice.

Respectfully submitted, this the 10th day of April 2024.

/s/ Terry L. Wallace
Terry L. Wallace
NC Bar # 26806
**WALLACE LAW FIRM PLLC**
6000 Fairview Road, Suite 1200
Charlotte, NC 28210
T: (704) 626-2903
F: (704) 626-3476
E: terry@wallacelawnc.com

/s/ Mindy B. Sanchez
Mindy B. Sanchez
N.C. State Bar No. 43444
Mindy.Sanchez@Charlottenc.gov
600 E. Fourth St., 7th Floor
Charlotte, NC 28202
Phone: (980) 229-6873

Attorneys for Defendants

## CERTIFICATE OF SERVICE

This is to certify that on this date the undersigned filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** using the Court's CM/ECF system which will send notification of such filing to any CM/ECF participants.

Jenny L. Sharpe
J Sharpe, PLLC
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC 28277

This the 10th day of April 2024.

/s/ Terry L. Wallace
Terry L. Wallace
N.C. State Bar No. 26806

**WALLACE LAW FIRM PLLC**
6000 Fairview Road; Suite 1200
Charlotte, North Carolina 28210
Phone:  704-626-2903
Fax:  704-626-3476
Email: terry@wallacelawnc.com